354 So.2d 755 (1978)
STATE of Louisiana ex rel. Linda Louise KILLMAN and Peter John Killman
v.
Jennifer Louise GURLEY.
No. 8800.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1978.
Rehearing Denied February 14, 1978.
Writ Refused March 31, 1978.
*756 Mendoza & Hardin, Harry T. Hardin, III, Marrero, for plaintiff and defendant in reconvention and appellee.
Harry A. Burglass, Metairie, for defendant and plaintiff in reconvention and appellant.
Before BOUTALL, SCHOTT, and GARSAUD, JJ.
GARSAUD, Judge.
This suit arose from a petition for a Writ of Habeas Corpus obtained by the father of the minor children, Delton Dean Killman, seeking the return of his children and asking that the custody decrees of Utah be given full faith and credit in Louisiana. The mother of the children, Jennifer Killman Gurley, answered the writ and by way of reconvention asked that a full custody hearing be had in accordance with Emery v. Emery, 223 So.2d 680 (4th Cir. 1969). After a complete hearing full faith and credit was given to the Utah decrees, the rule to change custody was denied, and the Writ of Habeas Corpus was made peremptory with custody immediately returned to the father. From that judgment the mother appeals.
*757 The Killmans had their matrimonial domicile in Utah until March 1972 when Mrs. Killman (now Gurley) left with the two children of the marriage and came to Metairie, Louisiana. In July of 1972, due to financial hardship she felt forced to return the children to their father for proper care. At that time she signed a stipulation to the effect that custody of the two children should be awarded to Mr. Killman, subject to Mrs. Killman's visitation. This stipulation provided that the children would be allowed three months visitation yearly with their mother, wherever she might be residing. Mrs. Killman (Gurley) testified that she understood that this custody arrangement would only be temporary until she was financially able to care for her children. There was, however, no such indication in the stipulation and Mr. Killman categorically denied any such agreement. In accordance with this stipulation the Utah court awarded custody to Mr. Killman.
Mrs. Killman attempted to have custody changed in May 1974, but she again with advice of counsel signed a stipulation which granted continued custody with the father. This stipulation, and the judgment resulting from it, also provided for reduced visitation rights to the mother.
The Utah court once again faced the issue of custody in June 1975. The court on her testimony accepted the fact of Mrs. Killman's remarriage (which, in fact, did not take place until September 1975), but found that that fact alone was insufficient change of circumstances to warrant a change of custody. The court did, however, note that the father might be attempting to alienate the children's affection for their mother, and any such conduct on the part of the father was enjoined.
When Mrs. Killman's (Gurley) visitation rights were exercised in the summer of 1976, she chose not to return the children to their father in Utah. Mr. Killman petitioned for the Writ of Habeas Corpus, and these proceedings resulted.
The issue is whether the trial court erred in continuing custody of the children in the father.
It is to be noted that this is not an initial claim regarding custody of these children but rather a claim to change custody which had been granted to the father. Thus, the maternal preference provided in the Civil Code of Louisiana Article 146 is inapplicable. Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955). Rather the principles set forth in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971) and specifically reiterated in Estes v. Estes 261 La. 20, 258 So.2d 857 (1972) control. As stated in Fulco these principles are:
"(1) The paramount consideration in determining to whom custody should be granted is always the welfare of the children. Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958) and jurisprudence therein cited; see also Moosa v. Abdalla, 248 La. 344, 178 So.2d 273.
"(2) The general rule is that it is in the best interest of the children of the marriage to grant custody to the mother, especially when they are of tender years. Such paramount right of the mother to custody should not be denied unless she is morally unfit or otherwise unsuitable, and it is only in exceptional cases that the better interest of the children is served by changing their custody from the mother to the father. Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958); Boatner v. Boatner, 235 La. 1, 102 So.2d 472 (1958); Tullier v. Tullier, 140 So.2d 916 (La.App.1962) (citing numerous decisions of this court to such effect).
"(3) When the trial court has made a considered decree of permanent custody in the light of the above principles, even though such custody is subject to modification at any time when a change of conditions demands it, the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed. Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955); Guillory v. Guillory, *758 221 La. 374, 59 So.2d 424 (1952); Nugent v. Nugent, 232 So.2d 521 (La.App.1970) (citing numerous court of appeal decisions to such effect).
"(4) Upon appellate review, the determination of the trial judge in child custody matters is entitled to great weight. He is in a better position to evaluate the best interest of the children from his total overview of the conduct and character of the parties and the children and of community standards. His discretion on the issue will not be disturbed on review in the absence of a clear showing of abuse thereof. Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Salley v. Salley, 238 La. 691, 116 So.2d 296 (1959); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955); Guillory v. Guillory, 221 La. 374, 59 So.2d 424 (1952)."
As stated by Justice Tate writing for the Court in Fulco, the paramount consideration is the welfare of the children. See also Civil Code of Louisiana Article 157. Principles (2) and (3) above then are simply aids in determining what is in fact in the welfare or best interest of the children. Principle (4) states that once the decision regarding the best interest of the child is made by the trial judge it is entitled to great weight absent a clear showing of abuse.
Applying these principles to the case at hand we find that the trial judge did not abuse his discretion when he concluded that the best interest of the children dictated custody remain in the father. It was his finding that ". . . these children, at a tender age, having been in the physical custody of the Father for some four years, it would not be to their best advantage to at this stage to transfer custody to the Mother". (T. pp. 105 & 106). The Court felt that at this time in their lives it would be better for the children not to be uprooted from their home of four years. Such a conclusion is well within his discretion.
In further support of his decision regarding the greater welfare of the children, the trial judge found that the mother did not carry her heavy burden of proving that "the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed". Fulco at page 605. The record fully supports this finding as there was no evidence that the father was improperly caring for the children. Other than the one case of eavesdropping on the children's conversation with their mother which the Utah Court enjoined in their last decree, the record supports the view that Mr. Killman was a good father who provided a wholesome environment in which the children were being reared.
Finally, the paramount right of the mother (Principle (2)) to custody in this instance did not supplant the other considerations relative to the welfare of the children as this was neither an initial custody case nor a change of custody wherein the children are taken from the mother and given to the father.
Appellant relies heavily on Emery v. Emery, supra and Estes v. Estes, supra to justify a change of custody to the mother. Neither case, however, is applicable to the facts in this case. In Emery, custody was originally awarded to the father who had not remarried based upon a consent decree, and later custody of the twelve year old daughter was changed to the mother. In his reasons for judgment, the trial judge made it clear that the change was not attributable to the father's failure in his parental responsibilities. Rather, at this stage in her life this young girl needed the counsel, guidance and advice that her mother could provide because a strong maternal influence is important for young girls approaching womanhood. Here, not only is the daughter not at such a crucial age, but she also has the benefit and love of her stepmother.
In the Estes case, the primary justification for a change of custody to the mother was that the father had obtained custody through a consent amendment of the original decree which was clearly intended by both parties to be temporary only. The *759 temporary change order had specifically provided that the father was to have custody "until such time as [the mother] can provide a proper home for said children." Here there was no indication that the custody award to the father was intended by the parties to be temporary. Also, it should be noted that in both Emery and Estes the determination of the trial court was affirmed recognizing the great weight to which the discretion of the trial judge is entitled.
For the reasons stated above, we concluded that the Writ of Habeas Corpus was properly made peremptory and the judgment is affirmed.
AFFIRMED.
SCHOTT, J., concurring.
SCHOTT, Judge, concurring.
The only practical alternative to concurring in the opinion of my colleagues is a dismissal of this appeal as moot. I do not see that a reversal of the judgment of the trial court would have any practical effect.
After the Utah court signed two judgments awarding custody of these children to the father, appellant attempted without success to have custody of the children given to her by the Utah court. The only way our Louisiana court acquired jurisdiction over this case was because appellant refused to return the children to the father after she exercised visitation rights in accordance with the decree of the Utah court.
At the conclusion of the custody hearing in Louisiana the trial judge declined appellant's motions for a suspensive appeal and a stay order, and the father was allowed to take immediate custody of the children and return them to Utah.
If we were to reverse the judgment of the trial court appellant would be relegated to going to Utah where the children are now residing and asking a court of that state to give full faith and credit to our judgment and turn the children over to her.
In effect, her position in then attempting to take the children away from the father in Utah would be identical to the position he was in when he came here armed with a custody decree of the Utah court and was required to litigate custody in accordance with the laws and jurisprudence of this state.
Appellant has taken the position that the judgment of the court in Utah is not controlling and that we should decide this case based strictly on Louisiana jurisprudence. If she obtained a favorable decree from this court and then tried to regain the custody of her children in Utah the Utah court would undoubtedly take the same position she has advocated here, namely, that the law of the state where the children are now located controls the result of the case. In no case would our decree control that court.
Thus, whether appellant wins or loses her case here, the result is the same for her. The only way she can regain custody of her children is to win a custody hearing in the Utah court based upon Utah legal principles.